## BATRE v. SIMPSON.

1. Where a contract was made for the purchase of ninety bales of cotton, part at one price and part at another, all of which had not been weighed, it must be regarded as an entire contract ; and if the cotton was destroyed before it was all weighed, the plaintiff is not entitled to recover the price of any part of it. And the willingness of the purchaser to have taken less or more than the plaintiff agreed to sell him, cannot change the character of the contract.

2. Merely sending a delivery order for cotton on a warehouseman to the purchaser without solicitation on his part, all of which is not in a deliverable state, will not in the absence of other proof, transfer the property so as to put the cotton at the purchaser's risk.

3. Books of accounts kept by a deceased clerk, and other entries or memoranda, made in the course of business or duty, by any one who would at the time have

been a competent witness to the fact which he registers, are admissible evidence; and where the book or memoranda in which the entry is made, is lost, then a copy, supported by the oath of the party who copied it, is admissible.

Writ of Error to the Circuit Court of Mobile.

This was an action of *assumpsit* by the defendant in error against the plaintiff, to recover the price of cotton sold and delivered. The cause was tried on the *general issue.* On the trial it was proved that one Gary, a cotton broker of Mobile was employed by the defendant to purchase cotton for him, and on Saturday, the 31st March, 1838, applied to the plaintiff, a cotton factor of that city, to purchase of him the cotton in question. The plaintiff exhibited samples of the cotton he had on hand, and Gary agreed to take ninety bales—for the price of which the action is brought—took the marks thereof, and stipulated the price at sixteen cents for a part, and fifteen and three-fourth cents for the residue, *per pound.* The keeper of the warehouse in which the cotton was stored was present when the contract was made, and to an inquiry addressed by Gary to the plaintiff, stated that the cotton could not be delivered until Monday, some of it, or twenty-four bales, had not been weighed. In the afternoon of the same day the broker sent for the samples of the cotton he had agreed to take, and they were sent to him, together with an order to the warehouseman to deliver the cotton to Gary. The order was retained by Gary, without presenting it to the warehouseman, or in any manner objecting to it.

The cotton in question consisted of the crops or parts of crops of three or more planters, with distinct marks on each parcel, and was received by the plaintiff about three weeks previously for sale. At the time of its reception by the plaintiff sixty-six bales of the cotton were weighed by the warehouseman with whom it was stored, he being a weigher of cotton in Mobile. The residue was not weighed while in plaintiff's possession, nor was there any evidence of what it weighed.

The cotton was not weighed after the bargain between Gary and the plaintiff, and the former being examined as a witness stated that he had never seen any table of the weights of any part of the cotton, and that he was not in the habit when he purchased cotton, to call for and examine the weights previ-

ously ascertained. On Sunday night next succeeding the contract, all the cotton was consumed by fire, before the removal of any part from the warehouse.

No part of the purchase money was paid, but sales of cotton were usually made for cash, which was to be paid in two or three days. Gary in his evidence stated that the number of bales was immaterial to him, that he may have had orders for five hundred bales on that day, and would have purchased a greater or less quantity than the ninety bales, if the prices and quality suited; but nothing of this kind was said at the time of the contract.

The Court charged the jury—1. Where an agreement is made by a broker for the purchase of cotton upon an exhibition of samples, if the cotton is ready for delivery, and an order on the warehouseman is given by the seller to the buyer, from that time it is placed at the buyer's risk. But if at the time of the agreement, it is stated that the cotton cannot be delivered for two days, and after the broker left the vendor, the latter, without being requested to do so, in the afternoon of the same day, sent the delivery order to the former, it forms a contract for the sale and delivery of the cotton to be executed two days thereafter.

At the request of the defendant's counsel, the Court instructed the jury—

2. The fact that part of the cotton was weighed by the factor, or his warehouseman, at the time of its receipt, did not form the criterion of the weights, unless the purchaser consented thus to receive it.

3. If the jury should believe, that at the time Gary made the contract, nothing was said about the weights, and none were disclosed to him, and he agreed to purchase at a specific price *per pound*, if the cotton was destroyed before the weights were ascertained by the parties, the loss must fall on the vendor.

The defendant's counsel prayed the Court to instruct the jury as follows:

4. If the contract was for three lots of cotton of specific marks, at a certain price *per pound*, the cotton remained at the risk of the seller until the weights were ascertained—this

charge the Court gave with the addition of the words "as to the cotton not weighed."

5. If the order to the warehouseman was for all the cotton, and a part had not been weighed, then no recovery can be had, unless a specific portion was taken into possession upon the delivery of the order. This charge the Court refused to give.

6. If the contract was for cotton of specific marks, and for a specific number of bales of those marks, the entire quantity must be delivered; and if, before any portion was removed and the weights of all ascertained, the whole was destroyed, the vendor must sustain the loss. This charge the Court also refused to give.

The plaintiff's counsel requested the Court to charge the jury as follows:

7. That although at the time the contract was made for the purchase of the cotton, the broker was informed that twenty-four bales were not weighed, and on that account the whole could not be delivered till Monday following; yet, if on the same evening the defendant sent for the samples, and with the samples the plaintiff sent an order for the delivery according to contract, the sending of the samples and order to the defendant, and the retention of the same by him, may, or may not, as the jury think proper, be inferred by them to be an agreement to receive the cotton according to the order. This charge was given in the terms in which it was asked.

8. That if the jury believe the cotton was weighed by a competent public weigher, and they have proof of those weights, they are a criterion in this case, although there was no express assent by the defendant. This instruction was also given.

To the charges given and the refusal to charge as prayed, the defendant excepted, &c.

*Further*, the plaintiff proved that Graham, the weigher and warehouseman was dead, and his book was destroyed by some one of the fires that occurred in Mobile, and then offered a witness to prove that after the destruction of the cotton a transcript was made by the witness from the book of Graham; which the witness produced and offered to read. To this evidence the defendant objected, but the objection was overruled

and the paper read to the jury; and thereupon he excepted, &c. All of which exceptions are duly certified.

A verdict being returned for the plaintiff for the price of the sixty-six bales of cotton and judgment thereupon rendered, the defendant has prosecuted his writ of error, &c.

CAMPBELL, for the plaintiff in error. The contract was entire for the purchase of ninety bales of cotton, a part at sixteen and the residue at fifteen and three-fourth cents, and the defendant was not obliged to accept any part unless the whole was tendered to him. [1 Ala. Rep. N. S. 140; 13 Wendell's Rep. 358; 22 ib. 658; 11 Eng. C. L. Rep. 256; 16 ib. 247; 17 ib. 401.] If a different principle were recognized, the defendant below might have been compelled to accept any portion of the cotton which was delivered, though the withholding of the remainder might change the average price at which the purchase was made.

The weighing was intended to ascertain the amount to be paid for the cotton, and the weights ascertained previous to the purchase were not obligatory on the purchaser—he had never assented to their correctness. [6 Cow. Rep. 254; 7 Dana Rep. 58; 6 Pick. Rep. 280; 14 Wend, Rep. 31.]

The delivery order to the warehouseman did not transfer the property previous to presentment or acceptance. [Chitty on Con. 115; 7 Gill and Johns. Rep. 406; 10 Eng. C. L. Rep. 138; 2 Comp. Rep. 441, 443.]

He referred to his argument in Magee v. Billingsley, 3 Ala. Rep. 679, and cases there cited.

HOPKINS and LESESNE, for the defendant. The contract was not entire; for the broker expressly states that his purchase was not induced by the exact number of bales which he agreed to take. [1 Camp. Rep. 54; 17 Eng. C. Rep. 19.] His orders for the day may have amounted to five hundred bales or more, and he would have bought more or less than ninety. At common law, delivery is not necessary to consummate a sale; and in the present case the sale was perfect as to all the cotton that was in a deliverable state as soon as the delivery order was accepted by the buyer; and this is the law even as to the twenty-four bales which was unweighed. [13

Pick. Rep. 173; 20 ib. 280; Hammond v. Anderson, 1 B. & P. Rep. 68; Zwinger v. Sumada, 7. Taunt. Rep. 265.]

The defendant's purchase was made in reference to the weights of the 66 bales previously ascertained, as evidenced by the remark of the warehouseman addressed him at that time; for that was such as to have induced him to insist upon a reweighing had he desired it. If the broker of the defendant did not consider the sale complete, and the property changed, why did he send for the samples? They could have been of no value to him, but were necessary to enable the plaintiff to discharge his commission.

It is possible that by considering each charge given, or refusal, as entirely isolated from all others, error may be found in the bill of exceptions, but such is not the correct mode of treating it. The bill of exceptions must be considered as a whole, and each part of it be allowed to explain and sustain the other, if by any reasonable interpretation it may be done.

They also cited their argument and the opinion of the Court in Magee v. Billingsley, 3 Ala. Rep. 579.

COLLIER, C. J.—The recital of the evidence in the bill of exceptions would seem to indicate that the contract for ninety bales of cotton was entire, and that none of them were put at the purchaser's risk until all were weighed. The charge given in answer to the third prayer of the defendant's counsel for instructions, which asserted that only as to the cotton not weighed, did the seller's risk continue—and the refusal to give the two following charges prayed, clearly show the opinion of the Judge to have been, that the cotton which was weighed might be at the purchaser's risk, although the remainder might not be in a deliverable state.

The entirety of the contract is a question of law, while the terms in which it was entered into are referable to the jury and must be ascertained by them. Instead then, of undertaking to inform the jury that the contract was divisible, the Court should have instructed them, that if the agreement was to purchase ninety bales of cotton in a warehouse in Mobile, at the prices stated by the witness, all of which were not in a condition to be delivered, because all was not weighed, the contract was entire for the purchase of all the cotton, though

there may have been a difference in the price, according to classification, and the bales had several distinct marks on them, indicating the name, &c. of the planter who prepared them for market.

In determining the character of the contract, we cannot, as argued by the defendant in error, be influenced by the extent of the orders which the broker had from his customers for cotton on the day he made the purchase in question. The seller had no connection with these orders, and does not appear from the record to have been aware of them. But even if the purchaser had fully informed the seller on this point, it could not change the legal effect of the contract; this must be ascertained from the situation of the parties, the subject matter and the terms employed by them as furnishing the surest *indicia* of their intention.

The sending the delivery order by the defendant in error to the plaintiff's broker was a gratuitous act, and done as it seems at his own suggestion. The *quo animo* with which it was sent and received does not appear; and it cannot be inferred that either party intended thereby to perfect the sale, inasmuch as the situation of the cotton remained as it was when the contract was made. Perhaps the reasonable inference is, the delivery order was sent merely to enable the purchaser to examine the cotton, and after it should be weighed to invest him with the right of property.

In Magee v. Billingsly, [3 Ala Rep. 698,] we say, "the order to the warehouseman to deliver all the cotton of the plaintiff in store, is not conclusive evidence to show a transfer of right; but the *prima facie* inference, from an inspection of the paper taken in connection with the contract, is that the seller intended to part with the possession, as well as the property, in favor of the purchaser." In that case it appeared that the order was received and presented at the warehouse, and that the contract was for the " purchase of an entire crop of cotton then present, without reference to quantity, at a certain price *per pound,* all of which had been weighed by a public weigher, within seven days preceding." No stipulation was made for a credit, but the money was to be paid when called for. There the cotton was in a deliverable state, and the purchaser authorized to take the actual possession at pleasure; while in the present

case the purchaser was informed that the cotton was not all weighed, and it could not be delivered in less than two days. There is a most obvious difference in the cases, even upon the hypothesis that the order was accepted by the broker of the plaintiff in error, to enable him to take the possession of the cotton ; for in the one case it would become operative immediately upon its delivery, and in the other not until the cotton had been weighed.

The first charge supposes, that although the delivery order was sent to the broker on the day the contract was made, it did not vary the contract, and that it was still to be executed two days thereafter. The seventh charge is inconsistent with the first, and assumes that the jury in their discretion may infer an agreement to receive the cotton, according to the terms of the order, inasmuch as it was not promptly returned by the broker. This inference we have seen is not authorized, and the latter instruction was calculated to induce a verdict not in harmony with the law.

We infer from the bill of exceptions that it was shown to the Court, that Graham, the weigher and warehouseman was dead, that the book, the extract from which was offered as evidence, was the one in which he made the entry of the weights of so much of the cotton as was weighed, and that the book itself was destroyed. These preliminary facts being established, the evidence was clearly admissible. The principle is now too firmly settled to require argument or illustration, that books of accounts kept by a deceased clerk, and all other entries or memoranda made in the course of business or duty, by any one who would at the time have been a competent witness to the fact which he registers, are admissible evidence. [2 Phil. Ev. C. & H. ed. 675, et post.] Where the book or memoranda containing the original entry is lost, then the rule which declares that the next best evidence attainable shall be received, makes the transcript from the book, supported as it was by the oath of the witness who transcribed it clearly admissible.

It appears from the view taken, that the Circuit Court erred in several particulars, which we need not recapitulate. The very extended consideration given to the law of sale in Magee v. Billingley, makes it unnecessary for us to add more in this case than to declare the judgment is reversed and the cause remanded.