Tucker *v.* Peaslee.

## TUCKER *v.* PEASLEE.

Each member of a particular firm is an authorized agent of the firm, and if an individual partner obtain money or goods, on his own credit, for the use of the firm, without disclosing the interest of the partnership in the transaction, the debt contracted is the debt of the firm, although the credit may have been given to the individual partner, and his note alone received for it.

Any evidence tending to show that the firm received and appropriated to their use the proceeds of such note of the individual partner, or that they in any way recognized and treated the note as the debt of the firm, is competent and appropriate on the question whether or not it were actually and truly a firm debt.

When the instructions given to a jury embrace, substantially, those asked, the refusal of the court to give those asked in the precise terms requested, although they may have been proper, is no cause for setting aside a verdict.

167
49 585
53 291
58 399
60 28
62 131
62 366

Tucker v. Peaslee.

If the note of one of two partners, actually given for a partnership debt, be paid by the other member of the firm, the partner, so paying the firm debt, cannot afterwards, by obtaining a transfer of the note to himself, collect the whole amount of the note of the maker.

Entries in partnership books, made in the regular course of business, during the continuance of a firm, by either of the partners, or their authorized clerks, are admissible evidence against and bind all the partners.

Evidence that has any legitimate tendency to prove the issue in controversy between the parties, is competent and admissible, however slight its bearing.

The admission of testimony, incompetent because of its immateriality, is not sufficient cause for setting aside a verdict, unless its admission was calculated to excite prejudices, raise false impressions, or exercise an undue influence upon the minds of the jury.

Where, in view of the positions of the parties and the points in dispute between them before the jury, an act proved is relevant and material, declarations accompanying the act, and strictly explanatory of it, are admissible as part of the res gestæ.

ASSUMPSIT, upon a promissory note, signed by the defendant, dated the 17th of November, 1845, for $150, payable to one J. P. Blye, or order, on demand, and by him indorsed to the plaintiff.

Plea, the general issue. The defence set up against the note was that the parties, being copartners in trade, the defendant procured a loan of Blye of $150, for the use of the partnership, giving his sole note therefor ; that he applied the money to the partnership business, and that it was understood between the parties that the note was to be recognized and treated as a partnership note. No direct evidence was offered to show an agreement or understanding to this effect between the parties at the time of procuring the loan ; but the defendant relied upon certain entries in the copartnership books, and circumstances in the subsequent proceedings of the parties, as tending to show that such was the understanding.

It appeared in evidence that in April, 1846, Blye purchased of the plaintiff the store in which the partnership business was carried on, giving up to him, in part payment therefor, the note in suit, together with another note held by him against the parties, dated July 29, 1845, for $100; payable to said Blye or

Tucker *v.* Peaslee.

order; that the notes were delivered by Blye to the plaintiff at the time of taking the conveyance of the store, but the note in suit was not indorsed by Blye until 1851, a short time before the commencement of this suit, when the plaintiff presented the note to him, and requested him to put his name on the back.

Blye at first hesitated, and made some objection, but upon the plaintiff's assuring him that he should suffer no harm from it, he consented, and endorsed his name upon it. In the cash book kept by the copartnership, in which the receipts and payments of cash in the course of their business appear to be regularly entered, are the following entries: " 1845, July 29, cash Dr. To loan account of J. P. Blye, $100," in the hand writing of one Moody, who at that date was employed as a clerk and bookkeeper for the copartnership, and who was introduced as a witness by the defendant, and, " 1845, November 17, cash Dr. To loan account, borrowed of J. P. Blye, (on note) $150.00," in the hand writing of one Dearborn, except the words " on note," which are in the defendant's hand writing. Said Dearborn was at said date also employed as a clerk by the copartnership, and he deceased before the trial.

Said Blye was introduced as a witness by the defendant, and he testified that in July, 1845, he loaned to the partners $100, for which he took a note for that sum, signed by the parties in their individual names, and not by their copartnership name; that in November following he loaned $150 to the defendant, for which he took the note in suit; that he never loaned to the copartners, or either of them individually, any other sums of money than said $100 and $150. He further testified that when the defendant borrowed of him the $150, he was about going to Boston, and immediately after left home in the cars for Boston. In a book kept by the copartnership as an account of " bills payable," are the following entries: " 1845, July 30 : J. P. Blye $100 ;" and " 1845, November 19, J. P. Blye, $150."

The plaintiff objected to the testimony of the witness, relative to the loan of the $100, and relative to the defendant's leaving

home to go to Boston, and also to the admission of the entries on the cash book, and account of bills payable, relating to the $100 loan, but they were admitted by the court.

Certain other entries appeared upon the copartnership books, some of which, as originally made, were entered upon the books in the regular course of business, before the dissolution of the copartnership, and which the evidence of the plaintiff tended to show had been subsequently altered; and others were made after the dissolution of the copartnership; and it was a material question before the jury whether these were made by the direction of the plaintiff, or by the direction of the defendant, without the consent or knowledge of the plaintiff.

Upon this point the plaintiff introduced evidence tending to show that the defendant had the custody of the books after the dissolution of the partnership; that the plaintiff was denied access to them, and that the defendant on several occasions about the time of the commencement of the suit, and afterwards, spoke of having the books in his possession; of his determination to keep them, and not let the plaintiff have them; and on one occasion, as testified to by two witnesses, stated that he had always had them, and that he had " fixed them" so as to give him the advantage in his controversy with the plaintiff.

The said entries, made after the dissolution of the partnership, are in the hand writing of said Dearborn, and the defendant's evidence on this point tended to show that said Dearborn, for some time after the dissolution, lived with the plaintiff, and was employed by him to do writing for him; that on one or two occasions, after the dissolution, the plaintiff came to the shop of the defendant, where the books were kept, and examined them; on one of the occasions being in the shop and making use of the books a considerable portion of the afternoon; and one of the defendant's witnesses, John Noyes, testified that at one time a boy named Scott, who lived with the plaintiff at the time when Dearborn lived with him, came to the shop, and said the plaintiff wanted the company books; that the boy took two or more of them away, and they were gone a week or two. The plaintiff

then proved that the Scott boy did not live at this time with the plaintiff; and said Noyes being recalled, testified that he had the impression it was the Scott boy who came for the books ; but he then thought he was mistaken in this, but he was not mistaken in the fact that a boy living with the plaintiff came for the books, and took away two or more of them, saying that the plaintiff wanted them, though he could not state who the boy was.

To this evidence the plaintiff objected, but it was admitted by the court.

It appeared in evidence that the copartnership business was conducted by the defendant as the active partner, and much evidence was introduced on both sides in relation to the means and opportunities which the plaintiff had, during the partnership, of knowing what appeared upon the books previous to the dissolution; but there was no evidence that the plaintiff had actual knowledge of the entries in question, until after the dissolution.

The court instructed the jury that entries made by the partners, or their authorized clerks, upon the partnership books, in the regular course of their business, during the continuance of the copartnership, were presumed to be known and assented to by each of the partners, as correct, until the contrary was shown, and that the presumption arose against the plaintiff, whether he had much or little opportunity to inspect the books, if they were open to him whenever he chose to inspect them, and that entries made subsequently to the dissolution, without his knowledge and consent, would be no evidence against him. The plaintiff's counsel requested the court to instruct the jury that if they were satisfied that the plaintiff did not know of the entries on the books in respect to the $150, or that, knowing of them, he did not assent to their correctness, then these entries are not evidence against him, but should be laid out of the case ; which the court declined to do.

The plaintiff's counsel also requested the court to instruct the jury that if the plaintiff took the note in suit of Blye, in part payment for the conveyance of the store, supposing the note to be due from the defendant alone, and not knowing that the money

for which it was given was borrowed for and used by the partnership, then the plaintiff is entitled to recover; but the court declined to instruct the jury in those terms, but did instruct them that if they should find that the plaintiff, at the time of receiving the note from Blye, understood that it was given for money borrowed for the partnership, and used in the partnership business, and that it was then understood between him and the defendant that it was a partnership debt, and was recognized and treated by them as such, the plaintiff was not entitled to recover; otherwise he was entitled to their verdict.

The jury returned a verdict for the defendant, which the plaintiff moved to set aside on account of the rulings, refusals and instructions aforesaid.

*Marston,* for the plaintiff.

1. The testimony of Blye relative to the loan of the $100, and relative to the defendant's leaving home for Boston, and also the entries on the books relating to the $100, ought not to have been received. Those were all collateral facts, neither of which had any tendency to prove that the $150 was borrowed and used for the partnership. The evidence that the defendant left home for Boston the next day after borrowing the $150, besides being remote from and irrelevant to the issue, is objectionable as being the act of the defendant, done without the knowledge of the plaintiff. *Filer* v. *Peebles,* 8 N. H. 226; *Carter* v. *Pryke,* Peak's Ca. 95; 1 Starkie's Ev. 40; *Munroe* v. *Leach,* 7 Met. 274.

2. The testimony of John Noyes, " that the Scott boy came for the books and took away two or more of them," was introduced to show that the entries on the books, made after the dissolution of the partnership, were made by direction of the defendant, and, as the case finds, it was a material question by whose direction those entries were made. The acts and declarations of the Scott boy, whether regarded as those of a stranger or of a professed agent, are equally inadmissible. See the authorities above cited.

The acts and declarations of an agent are not competent evidence to prove his authority, when questioned by the principal. *Tuttle* v. *Cooper*, 5 Pick. 417 ; *Mussey* v. *Beecher*, 3 Cush. 517 ; *Brigham* v. *Peters*, 1 Grey 139.

3. The court should have instructed the jury, as requested, " that if the plaintiff did not know of the entries on the books in respect to the $150, or did not assent to their correctness, they were not evidence against him, and should be laid out of the case." Those entries and the testimony of Blye constituted all the evidence in the case going to show either that the plaintiff knew anything about the $150, or that it was in fact borrowed for the use of the partnership. The note in question was the sole note of the defendant, and whether it was drawn, and the proceeds used for the partnership, he alone was liable to pay it. Story on Partnership, secs. 134, 140, 142 ; Collyer on Partnership, secs. 477, 478 ; 3 Kent Com. (4th Ed.) 41, and note *b ; Emly* v. *Lye*, 15 East 7 ; *LeRoy* v. *Johnson*, 2 Pet. 192.

If the defendant pledged his credit for the benefit of the partnership, he became thereby a creditor of the partnership ; but as between the parties to the note and subsequent holders, that fact was entirely immaterial. 3 Kent Com. 41 ; *Siffkin* v. *Walker*, 2 Camp. 308.

The engagements of one partner in his own name are not presumed to be known to the other partners. *Rogers* v. *Batchelor*, 12 Pet. 221.

*Christie & Stickney*, for the defendant.

The testimony of Blye and the entries on the books, relative to the loan of $100, were properly admitted.

The defence was that the note in suit was in fact a partnership note, though signed by Peaslee alone, and was so considered, and so recognized and treated by the parties at the time. The transactions relative to the two notes connect them together, and render this evidence admissible.

The entries upon the partnership books were the same as to both notes. Tucker paid both notes at the same time and in the

same manner, and received both notes from Blye without any indorsement of either. Both notes were treated alike by him, and the note for $150 was not indorsed by Blye until more than five years after it was paid. The note for $100 is admitted to be a partnership note, and was paid as such. The entries upon the books and the testimony of Blye had a tendency to show that Tucker considered and treated both notes alike as partnership notes, and that at the time he paid the notes he considered the note for $150 just as much a partnership note as he did the other note, and in this view the evidence was clearly admissible.

The testimony as to Peaslee's going to Boston was properly admitted. One point necessary for the defendant to make out was, that the $150 went to the use of the partnership.

The fact that Peaslee was about going, and on the next morning did go to Boston, where they purchased all their goods, had a tendency to show that the money thus borrowed was laid out in the purchase of goods for the firm, or at least that he would be likely thus to lay it out; and in that view the evidence, however slight, was competent.

The position of the plaintiff, to sustain which he cited several authorities, that Peaslee alone was liable to Blye for the $150, is not denied; yet if Tucker recognized and paid the note as a partnership note, he cannot now collect it of Peaslee; and any evidence, having a tendency to show that he recognized and paid the note as a partnership note, or as given for partnership purposes, is admissible.

The testimony of Noyes as to the taking of the company books was properly admitted.

It was clearly competent for Peaslee to prove that a boy in Tucker's employ came to the shop and got the company books, and carried them away, and that they were absent from the shop a week or two. Thus far it would seem there can be no dispute, and we think it equally clear that he could prove what the boy said when he applied to him for the books; it is part of the *res gestæ*. *Hadley* v. *Carter*, 8 N. H. 40; *Sessions* v. *Little*, 9

N. H. 271. It may not be conclusive, but it is competent to go to the jury; it shows why Peaslee let the boy have the books.

It was contended by Tucker at the trial that Peaslee kept the company books from him. To rebut that position, it was competent for Peaslee to prove that whenever Tucker, or any one else in his name, called for the company books, he readily gave them up.

The instructions given by the court were correct. It is the duty of partners to keep a correct account of all their partnership business, which shall be open at all times to the inspection of each partner. The law imposes this duty and obligation, whether there is anything about it in the contract of partnership or not. Story on Partnership 277, sec. 181.

It is presumed that each partner looks after his own interest, and knows the entries upon the partnership books, made in the regular course of their business. It is for their interest to examine the books. Men of ordinary prudence do it. It would be gross negligence not to do it. It is to be presumed that men use ordinary prudence in protecting their rights and interests. Entries, therefore, thus made, and remaining upon the partnership books without objection, are presumed to be known to each partner, and assented to as correct, until the contrary be made to appear.

Entries made in the books of an individual, by his authorized clerk, in the regular course of business, are presumed to be known to him, and are evidence against him, unless he proves that they were improperly made without his authority.

The instructions requested by the plaintiff's counsel were properly refused.

They were different from the instructions which the court had previously given, and the request evidently proceeded upon the ground that partners are not presumed to know the entries made upon the partnership books in the regular course of business, and are not bound by such entries, unless it be proved affirmatively that they knew of them and assented to their correctness. Such it is believed is not the law, but the contrary. Partners are bound

by such entries, unless they prove that they were improperly made. The burden of proof is on the partner who objects to them.

FOWLER, J. It seems conclusively settled by the weight of authority, that if, in the present case, the one hundred and fifty dollars, borrowed by the defendant of Blye, were in fact obtained for the firm and appropriated by them to their own use, the indebtedness therefor was a firm debt, although the defendant's note alone was taken for it, and although Blye supposed he was loaning the money to the defendant, and actually gave the credit to him. The authorities are uniform in maintaining the doctrine that where the principal is unknown to the vendor at the time of a sale, he may, upon discovering the principal, resort to him for payment, although, in the absence of such knowledge, the credit may have been given to the agent alone, and his individual note alone have been taken for the debt. Story on Agency 291 ; *Paterson* v. *Gandasequi*, 15 East 62 ; *Raymond* v. *Crown and Eagle Mills*, 2 Metcalf 324 ; *Thompson* v. *Davenport*, 9 Barn. & Cress. 78.

The same principle, which seems to have been uniformly applied to the case of principal and agent, is equally applicable to that of an individual partner and his firm. Each partner is an authorized agent for the firm ; and if the individual partner obtain money or goods on his own credit for the use of the firm, without disclosing the interest of the partnership in the transaction, the debt contracted is the debt of the firm, notwithstanding the note of the individual partner alone may have been given and taken therefor. *Smith & Lougee* v. *Smith & Bannister*, 7 Foster (23 N. H.) 253 ; *Reynolds* v. *Cleveland*, 4 Cowen 282 ; *Griffith* v. *Buffum*, 7 Wash. 181 ; *Muldon & al.* v. *Whitlock*, 1 Cowen 290 ; *Brown* v. *Hewley*, 2 B. & P. 518 ; *Schermerhorn* v. *Loines*, 7 Johnson 311 ; *Saville* v. *Robertson*, 4 D. & E. 720 ; *Hoare & als.* v. *Dawes & al.*, Douglass 371 ; *Jaques* v. *Marquand*, 6 Cowen 497 ; *Everett* v. *Chapman*, 6 Conn. 347.

Any evidence, therefore, going to show that the firm, consisting

of the plaintiff and the defendant, received and appropriated the money, or in any other way recognized and treated the one hundred and fifty dollars indebtedness to Blye, or the defendant's note given for it, as the debt of the firm, was competent and appropriate to sustain the defence relied upon ; for such evidence would have been competent and proper to have enabled Blye to maintain an action against the firm, for the money originally loaned to the defendant alone. In this view the court very properly instructed the jury that if the plaintiff, at the time he received the note of Blye, understood that it had been given for money borrowed for the partnership and used in the partnership business, and it was then understood by both partners that it was a partnership debt, and recognized and treated by them as such, the plaintiff could not recover.

The case finds that the plaintiff paid Blye for the note in April, 1846, by conveying to him the store in which the partnership business had previously been carried on ; while, in the same way, and at the same time, he paid him the hundred dollar note, which, upon the evidence, must be considered to have been a partnership debt. Now, it is too clear to need illustration or the citation of authorities, that if the plaintiff and defendant then regarded and treated the $150 note as a partnership debt, given for money used in the business of the firm, and the plaintiff paid it as such, the note was *functus officio*, and could not afterwards be revived or negotiated by Blye to the plaintiff, as a valid, subsisting note ; and whatever other remedy the plaintiff might have, if it turned out that the note had been paid by him wrongfully, or through mistake, he could not obtain redress through a suit upon a defunct note, transferred to himself nearly five years afterwards, apparently for the sole purpose of enabling him to institute a suit thereon in his own name against the defendant.

The court further instructed the jury, that if they found any other or different state of facts than that specified in the instructions to which we have just referred, the plaintiff was entitled to their verdict. This part of the charge was at least sufficiently favorable to the plaintiff, and included substantially the instruc-

tions asked for by him, and more. Where the instructions given to the jury embrace substantially those asked for by the party, although in different language, the refusal to give the instructions requested, in the precise language suggested, although they may have been proper, is no sufficient cause for setting aside the verdict. The precise words used are immaterial, unless calculated to mislead the jury, and the court is entitled to select its own phraseology. Here the court in effect instructed the jury to return their verdict for the plaintiff, unless they found, among other things, that the plaintiff had actually paid the $150 note to Blye as a partnership debt, understanding it to be such at the time of payment. Now, it is quite clear that the plaintiff cannot rightfully complain that he was injured by the instructions so given. The wrong done was to the other party; for it is very evident that if the note were actually a partnership debt, and given for funds appropriated by both partners to the use of the firm, and the plaintiff paid it, whether he understood at the time of payment that it was a partnership debt or not, he could not afterwards, by obtaining a transfer thereof to himself, collect the whole amount of his partner. *Edgerly* v. *Emerson*, 3 Foster (23 N. H.) 560, and authorities there cited.

So, too, we think the instructions of the court in relation to the entries made by either or both the partners, or their authorized clerks, on the partnership books, in the regular course of their business, during the continuance of the partnership, to have been strictly correct. Entries made by one partner during the partnership, in a book of accounts, are admissible evidence against, and bind both, on the principle that each partner is an authorized agent of the firm. *Walden* v. *Sherburne*, 15 Johnson 409. It was the duty of the defendant, if he received money of Blye for the partnership, to enter, or cause to be entered, the receipt thereof in the books of the firm, so that the same might be open to the inspection of the plaintiff. And such entry having been made by the common agent of both partners, is evidence against both, whether both knew of its existence or not. A memorandum in writing in the books of a company, made by an

agent of the parties and at their request, is evidence for or against them, and for and against all parties claiming under them. *New-England Manufacturing Co.* v. *Vandyke*, 1 Stockton 498. In an action by a bank against a depositor for having overdrawn, the books of the bank are competent evidence to show receipts and payments of money, the officers of the bank being so far the agents of both parties. If the clerk who made the entries is dead or insane, the book itself is admissible, upon proof of his hand writing. *Union Bank* v. *Knapp*, 3 Pick. 96. Entries made by clerks, in the usual course of business, are admissible, when the clerks are deceased. *Brewster* v. *Doane*, 2 Hill 537. Books of account, kept by a deceased clerk, and other entries or memoranda, made in the course of business or duty, by any one who would at the time have been a competent witness to the facts he registers, are admissible evidence after his death. *Butre* v. *Simpson*, 4 Ala. 305.

We think, moreover, that the testimony of Blye in relation to the loan of the hundred dollars, and the fact that this hundred dollars was entered upon the books, as borrowed by the firm of Blye, were matters competent for the consideration of the jury. They had some tendency, however slight, in connection with the conceded facts, that the two loans were the only ones made by Blye to the partners or either of them, that both notes were paid by the plaintiff at the same time and in the same way, and that the hundred and fifty dollar loan was entered both in the cash and bills payable book, in the same manner as the hundred dollar loan, as a loan to and the debt of the firm, to show that the one hundred and fifty dollars were actually obtained for and appropriated to the use of the firm, although the individual note of the defendant alone had been given and received therefor. And this tendency was legitimate. The hundred dollar loan, though made to the individual partners on their joint note, if not admitted, seems to have been clearly proved to have been contracted and paid as a partnership debt. The hundred and fifty dollar loan, though made on the note of the defendant alone, was shown to have been repaid by the plaintiff at the same time, from the

same fund, and without any transfer of the note originally given for it, as the indisputable debt of both partners. Whether he actually regarded and paid it, and whether it had been recognized and treated by the firm, and in fact was a partnership debt, were material and important questions. That both loans had been entered on the partnership books, at their respective dates, in the same ways and in the regular course of business, either by the partners themselves or their clerks, and had both been paid at the same time and in the same way by one of the partners, were circumstances, not irrelevant, or immaterial, or unimportant, in arriving at a proper conclusion as to their real character. The entries on the partnership books were clearly competent, on the principle before adverted to.

As the case stands, containing nothing in any manner connecting Boston with the business of the firm, or the hundred and fifty dollars borrowed by the defendant with his journey thither, or any business transacted by him for the firm there, the testimony of Blye, that, when the defendant borrowed the hundred and fifty dollars of him, he was about going to Boston, and immediately after left home in the cars for Boston, would seem to have been entirely irrelevant and immaterial, and consequently improperly admitted. We cannot perceive any possible legitimate bearing the fact of the defendant's being about to visit Boston at the time of the loan, and immediately thereafter, carrying that purpose into execution, could have had on the question whether or not the money was obtained for and applied to the uses of the firm, or whether it had been regarded and treated by the partners or paid by the plaintiff as a firm debt. But we are also unable to see that this evidence, although improperly admitted, could have had any influence, proper or improper, upon the plaintiff's claim or the defendant's defence. It does not seem to have been at all calculated to excite prejudices, or raise false impressions, or exercise an undue control over the minds of the jury, but appears to have been wholly immaterial, in the broadest sense of that term. Its improper admission does not therefore

form any sufficient cause for setting aside the verdict. *Winkley* v. *Foye*, 8 Foster (28 N. H.) 519 ; *Same Case*, 33 N. H. 171.

The defendant excepts to the competency of the testimony of John Noyes, as to the declarations of the boy who came after the partnership books and took them away. The case finds it to have been a material question on the trial whether certain entries, made in those books after the dissolution of the firm, were so made by the direction of the plaintiff, or of the defendant ; that those entries were in the hand writing of Dearborn, a deceased clerk of the firm ; that the defendant's evidence tended to show that Dearborn resided with, and did writing for the plaintiff, a considerable length of time after the dissolution of the firm ; and Noyes testified that, while Dearborn was thus resident with the plaintiff, a boy, who was at the same time living with the plaintiff, and whom he at first thought to have been the Scott boy, came to the defendant's shop, and declaring that the plaintiff wanted the company books, obtained and carried away with him two or more of those books, and they were gone from the shop a week or more. The main material question was, whether certain entries, in the hand writing of Dearborn, were made by direction of the plaintiff or defendant. As preliminary and incident to that question, it was important and material whether the plaintiff or defendant, at any time after the dissolution, had such possession or control of the books, in the presence of Dearborn, that the entries might have been made by the direction of one or the other. The plaintiff denied that he had ever had access to them, so that he could have directed the entries, and asserted that the defendant had always had the exclusive custody and control of them. It was with a view to refute this denial, disprove this assertion, and show such possession and control of the books by the plaintiff as would have enabled him to direct the entries, that the testimony of Noyes and other evidence was offered by the defendant. Regarding these positions of the parties, it was material that the books passed from the possession of the defendant, and came, probably, into that of the plaintiff. The means by which they left the custody of one and came into

that of the other, were, therefore, relevant and material.   Noyes testified that a boy, who was living with the plaintiff at the same time the deceased  clerk, Dearborn, worked there, came and got the books, saying that the plaintiff wanted them ; that, upon making this declaration, he was permitted to take the books, and they were gone a week or more.   The facts proved by Noyes were relevant and material, in view of the positions taken by the parties before  the  jury, independently of what the boy said accompanying those facts ; his declarations related  to  those facts, accompanied  and were  strictly explanatory of them, and therefore, on well settled principles, admissible as part of  the *res gestæ.* *Hadley* v. *Carter*, 8 N. H. 40 ; *Sessions* v. *Little*, 9 N. H. 271 ; *Morrill* v. *Foster*, 32 N. H. 360, and authorities.

The various objections and exceptions, made and taken, being overruled, there must be

*Judgment on the verdict.*