# Elliott *v.* Dycke.

*Statutory Action in nature of Ejectment.*

1. *Estoppel against denial of plaintiff's title.*—When the defendant in ejectment, or the statutory action in the nature of ejectment, sets up a title derived from the plaintiff, he is estopped from denying that plaintiff originally had title.

2. *Title of purchaser at sheriff's sale; sufficiency to support ejectment.* When the plaintiff, claiming under a purchase at sheriff's sale, produces the judgment, execution and levy, and the sheriff's deed, and proves the possession of the defendant in execution at the time of the levy and sale, he makes out a *prima facie* case of title; and the *onus* is then devolved on the defendant to show a superior title, either by documentary evidence, or by proof of adverse possession sufficient to perfect a title under the statute of limitations.

3. *Proof of adverse possession.*—To make out the defense of adverse possession for ten years before suit brought, it is not necessary to prove actual occupancy by the defendant himself—it may be by himself, or by tenants holding under him.

4. *Estoppel between landlord and tenant.*—The law holds a tenant to very strict allegiance to his landlord, and does not allow him, having entered under his landlord, though only paying the taxes on the land as rent, to throw off his allegiance, and become the tenant of another, unless he shows that other has acquired the title of his former landlord pending his occupancy.

5. *Conveyance of partnership lands, in name of partnership, by one partner.*—Where the legal title to lands stands in the name of a partnership, a deed executed by one partner, in the partnership name, is effectual to convey his individual interest, and operates by way of estoppel against him in a subsequent action against a sub-purchaser from his grantee.

6. *Proof of deed executed in another State.*—When a deed, conveying lands in Alabama, is executed in Georgia, the presumption is, in the absence of proof to the contrary, that the subscribing witnesses resided in Georgia; and when it becomes necessary here to prove its execution, it is not necessary to produce or account for the absence of the witnesses.

7. *Secondary evidence of lost deed.*—When proper proof has been adduced of the loss or destruction of a deed, which had never been recorded, its execution and contents may be established, as against the grantor, by proof of his subsequent admissions, and acts indicating that he set up no title to the land as against the grantee.

8. *Entries made by deceased or absent witness.*—When a witness is shown to be dead, or beyond the jurisdiction of the court, entries in his handwriting, in the usual course of business, made at or about the time of the transaction to which they relate, are competent and admissible as evidence in any issue involving that transaction.

[Elliott v. Dycke.]

9. *General and specific objections to evidence.*—An exception to each separate and separable portion of an entire deposition, or a large mass of evidence, not distinguishing between the legal and illegal portions, defeats itself, and amounts only to a general exception to the whole.

10. *Proof of deed.*—Where the issue is whether a deed was ever executed, an alleged copy being produced, the fact that it is without date, and the further fact that the deed was never filed for record, are circumstances to which the jury may look in deciding the question.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. LEROY F. BOX.

This action was brought by James M. Elliott, as surviving partner of the late firm of Cothran & Elliott, against A. C. Dycke and B. F. Reynolds, to recover the possession of a tract of land called the "Garrett place," which was particularly described in the complaint; and was commenced on the 10th December, 1879. F. E. McKenzie was permitted to defend, as the landlord of the defendants; and the cause was tried on issue joined on the pleas of not guilty, and adverse possession, under claim of right, for more than ten years before the commencement of the suit. The plaintiff claimed the land under a purchase at execution sale as the property of Thomas Garrett, and he produced and proved the judgment and execution against said Garrett, the levy and sale, and the sheriff's deed to said Cothran & Elliott as the purchasers. The judgment was rendered on the 2d November, 1860; the sale made on the 1st April, and the sheriff's deed to Cothran & Elliott as the purchasers executed and dated on the same day. The defendants, through said McKenzie as their landlord, claimed as purchasers under an alleged conveyance by said Cothran & Elliott to Cadow, McKenzie & Co., a mercantile firm doing business in Charleston, South Carolina, or to William Cadow individually for said firm, and a subsequent conveyance by said Cadow to said McKenzie. The principal matter of controversy was, whether Cothran & Elliott had executed to Cadow a conveyance of the land, as defendants insisted, or only a bond for title, as plaintiff insisted and testified, which was never consummated by a conveyance because the agreed purchase-money was never paid; and many of the assignments of error are founded on the rulings of the court on evidence relating to the execution, contents and loss of this paper.

The defendants offered in evidence, 1st, the deposition of said William Cadow, who testified, in substance, that in July, 1862, his firm having large claims against Thomas Garrett, which they desired to collect if possible, he went to Rome, Georgia, where Cothran & Elliott resided, bought from them all claims which they held against said Garrett, and took from Elliott a deed in the name of the firm, conveying to him the

Garrett lands, which they had bought at sheriff's sale, paying between $5,000 and $6,000 as the entire purchase-money; that the deed was attested by two witnesses, one of whom was W. L. Malholen; that this deed, with all the other papers and claims against Garrett, was afterwards sent by mail to B. F. Pope & Son, attorneys, at Ashville, Alabama, who acted as agents for his firm in looking after the lands, and was never seen by him afterwards; and that a copy-deed annexed to his deposition, which was signed by Cothran & Elliott, attested by W. L. Malholen and G. W. Bowen as subscribing witnesses, and recited a consideration of $1,000 in hand paid, but was without date, was, as he believed, a correct copy of said deed. He also appended to his deposition, as an exhibit, a copy of the letter which he had written to Pope & Son, inclosing the papers to them, and in which he mentioned the details of his contract with Elliott, and said that, if the deed in the firm name was insufficient, Elliott would execute another. The plaintiff, in filing cross-interrogatories to this witness, had also filed objections to several of the interrogatories in chief; and when the deposition, with its exhibits, was offered in evidence on the trial, while insisting on these objections, he also "objected separately and successively to each and every question and answer, and to each part thereof;" which objections being overruled, he reserved exceptions.

The defendants next offered in evidence the deposition of R. S. Gaunt, with the exhibits thereto; he having been a book-keeper for the firm of Cadow, McKenzie & Co. during the time of the said transaction between them and Cothran & Elliott, and testifying to copies of entries made in their books by himself and H. M. McKenzie, since deceased. One of the exhibits was a copy of an entry containing a statement of the account against Garrett, and a memorandum added of the fact that the papers, with the deed of Cothran & Elliott, had been transmitted by mail to Pope & Son; and another exhibit was a copy, taken from their letter-book, of the letter to Pope & Son. The plaintiff "objected, separately, singly and successively, to each sentence and paragraph of said copy exhibits;" and he excepted to the overruling of his several objections.

The defendants then offered in evidence the deposition of Mrs. Susan E. McKenzie, whose testimony was in these words: "I met with Mr. James M. Elliott in Rome, Georgia, in the fall of 1870. He asked me if Mr. McKenzie had the titles of the land, and I told him yes. He then inquired if I knew where they were; and I replied, that I had them in my trunk. He did not ask to see the titles, or deed, and I did not show them to him. He did not, on this occasion, make any claim to said land, or make any denial of the execution of said deed. I

[Elliott v. Dyeke.]

asked him to give me directions to the place, and he cheerfully did so." The plaintiff objected to the reading of this deposition, "and to each sentence and paragraph thereof, separately, singly, and successively ;" and excepted to the overruling of his several objections. The defendants then offered in evidence the deposition of Geo. S. Walden, who testified that, in the spring of 1863, acting as attorney for Baker, Lawler & Co., of Mobile, who had obtained a judgment against said Thomas Garrett, he went to Rome, Georgia, for the purpose of redeeming the lands from Cothran & Elliott, and was informed by Elliott that they had transferred their interest in the land to Cadow, McKenzie & Co., of Charleston, South Carolina, who had redeemed from them ; that Elliott then gave him letters in the name of Cothran & Elliott, to bankers in Charleston, whither he at once proceeded, and offered to redeem from said Cadow, McKenzie & Co., who responded by buying the judgment of Baker, Lawler & Co. To the reading of this deposition, and to each part thereof, objections were interposed by plaintiff, and exceptions reserved. F. E. McKenzie, the landlord of the other defendants, was examined as a witness in their behalf, and testified, in substance, that the paper purporting to be a copy of the deed from Cothran & Elliott to W. Cadow was in the hand-writing of H. M. McKenzie, deceased, who was a clerk and book-keeper in the office of Cadow, McKenzie & Co.; that he first saw said copy in the safe containing the books and papers of said firm, and had never seen the original deed ; that while in Rome, Georgia, in 1870, he showed said copy to plaintiff, and asked him to state the quantity of land contained in the tract described ; that plaintiff kept the paper until the next day, and then returned it, giving the desired information, making no objection, and setting up no title to the lands. The defendants also read in evidence, against the objections of the plaintiff, the deposition of the surviving partner of Pope & Son, who testified to the receipt of the package of papers from Cadow, McKenzie & Co., relating to the Garrett lands, the correctness of the copy of their accompanying letter ; that he had frequently seen the package of papers in the office of Pope & Son, prior to the destruction of their office and papers by fire in 1868, though he did not examine its contents; and that he had never seen the packages since the fire, though he had searched for it. On this evidence the court permitted the copy-deed to be read in evidence to the jury ; to which ruling the plaintiff excepted. In relation to this deed the bill of exceptions afterwards contains the following recitals : "Plaintiff introduced proof tending to show that no deed for the lands in controversy, purporting to be executed by Cothran & Elliott to Cadow, or to any other person, had

ever been recorded, or filed for record, in the probate office of Cherokee county, where the lands were formerly situated, or in Etowah county, where the lands are now located." After the evidence was concluded, the plaintiff again moved to exclude the copy-deed from the jury, and excepted to the overruling of his motion.

The deed of Cadow to F. E. McKenzie was dated January 19, 1870, and was attested by two witnesses ; and its execution having been proved by their depositions, it was read in evidence against the objection of the plaintiff. As to the possession of the land, it was shown that Thomas Garrett was permitted by Cothran & Elliott, after their purchase, to remain in possession without paying any rent, on his promise to pay the taxes and keep up the fences ; that he was afterwards suffered by Cadow to continue in possession as before ; and that in 1875, on a demand of rent by an agent of McKenzie, he left the land, and removed to Mississippi. The defendants proved the declarations of said Garrett, at sundry times during his possession, that he was holding as the tenant of Cadow, or of Cadow, McKenzie & Co. ; while the plaintiff proved his admissions that he held as the tenant of Cothran & Elliott, and executed to them in April, 1870, a writing signed by Thos. B. Cooper and James Bradford as attesting witnesses, by which he acknowledged that he held the lands as their tenant.

The plaintiff requested the following (with other) charges, and duly excepted to their refusal: (5.) "In arriving at a decision as to whether any deed was ever made to Cadow by Cothran & Elliott, the jury can look to the fact, if it be shown by the evidence, that the purported deed to Cadow was never recorded by Pope, or otherwise, in Alabama." (6.) "In deciding whether any deed was made or not, the jury can look to the fact that the purported copy of the deed to Cadow bears no date, and does not show when it was executed."

The rulings of the court on the evidence, and the refusal of the charges asked, with other matters, are now assigned as error.

S. F. RICE, and TURNLEY & REAVES, for appellant.

McSPADDEN & CARDEN, AIKEN & MARTIN, and DENSON & DISQUE, contra.

STONE, C. J.—The questions of meritorious contestation in this case are very few, and, as matters of law, they are well settled. The title set up by defendant was derived from plaintiff, and this estops him from denying that plaintiff originally had title. But it would seem this principle need not be invoked. The testimony is, that Thomas Garrett had been in

[Elliott v. Dycke.]

possession of the lands sued for, and he was still in possession when they were sold by the sheriff, bought by Cothran & Elliott, and title made to them. The judgments and executions, the levies, and the sheriff's returns, were also put in evidence. This made a *prima facie* case of title in Cothran & Elliott, and devolved cn defendants the necessity of showing a better title, either by documentary evidence, or by independent adverse holding for a sufficient length of time to bar a recovery. 1 Brick. Dig. 627, § 40; *Badger v. Lyon*, 7 Ala. 564.

The defense relied on is two-fold; and first—peaceable, adverse possession for ten years before suit brought. Actual occupancy—*pedis possessio* by the defendant himself—is not necessary to maintain this line of defense. If it be shown that McKenzie has been in possession, claiming in independent right for the requisite ten years, this is enough. And if Thomas Garrett, the elder, held possession under him, or under Cadow, his grantor, this constituted him a tenant, and the possession was that of the landlord. So, if Garrett was in possession from Cadow or McKenzie, simply by permission, whether he was paying rent beyond taxes, or not, he could not, while he retained the possession, throw off his allegiance, and become the tenant of another, unless he shows that other has acquired the title of his original landlord, pending the occupancy. The law holds a tenant to very strict allegiance to his landlord. *Randolph v. Carlton*, 8 Ala. 606. It is thus shown that, if Garrett first agreed, either with Cadow, Cadow, McKenzie & Co., or with McKenzie, or with an agent acting for them, to hold and occupy the lands under him or them, there is no testimony in this record that he ever afterwards did or could transfer his allegiance to another. The paper alleged to have been executed afterwards in the presence of Cooper and Bradford, would, in such case, amount to nothing.—2 Brick. Dig. 194, § 4.

The other line of defense is an alleged conveyance of the lands in 1862, by plaintiff to Cadow, and by him subsequently, and before this suit was brought, conveyed to McKenzie, who was let in to defend. The other defendants are his tenants, claiming no title in themselves. The deed from Cadow to McKenzie bears date January, 1870, and there does not appear to be any defect in the proof of its execution. As matter of judicial ascertainment, we hold it conveyed to McKenzie all the title which Cadow had. The execution of the deed was proved, and both it and the proof of its execution were in evidence. This deed does not appear to have been one of the seriously disputed links in defendant's chain of title.

Was the title to the lands conveyed by Elliott to Cadow? Elliott alone executed the conveyance, if conveyance there was,

[Elliott v. Dycke.]

using the name Cothran & Elliott, the partnership name. They were partners. We need not inquire whether a deed thus executed conveys the entire title, or only the interest of the partner who executes the conveyance.—*Caldwell v. Parmer*, 56 Ala. 405. Elliott alone executed the deed, if one was executed, and he alone brings this suit. He was certainly competent to convey away all the legal title he can assert in an action of ejectment, brought in his own right. The conveyance, if made, is as broad as the right asserted by his suit.

The theory of the defense on documentary title is as follows: It is claimed for defendants that, in 1862, Cadow, the leading member of the firm of Cadow, McKenzie & Co., purchased from Elliott, of the firm of Cothran & Elliott, the lands in controversy, together with all the unsatisfied claims Cothran & Elliott held against Thomas Garrett, for the sum of five thousand and four dollars, paid in cash; and the said Cothran being absent from home, that a conveyance of the lands was then made to Cadow by Elliott, he executing it in the firm name, Cothran & Elliott. An alleged copy of this deed was offered and received in evidence, purporting to be attested by two subscribing witnesses. The proof made tends to show that this deed was made in Rome, Georgia, where Cothran & Elliott had their residence. The firm of Cadow, McKenzie & Co. did business in Charleston, South Carolina. The proof then tends to show that this deed, together with the uncollected claims purchased from Elliott, was, not long afterwards, mailed to a firm of attorneys residing in Alabama, in a county adjoining the one in which the lands were then situate, and in which Garrett resided; and there was proof that such attorneys received said package inclosing the deed, and that it was afterwards destroyed by fire. Elliott denied the making of the deed, claimed that he only executed a bond for title, and that only one thousand dollars of the purchase-money had been paid. It is thus shown that the making, the destruction or loss, and the contents of the deed, were the controlling questions in issue in the court below.

The deed being executed in Georgia, the presumption, in the absence of all testimony on the subject, is, that the subscribing witnesses had their domicile in that State. The defendants were not called upon to account for their absence, but were rightly permitted to prove the execution of the deed by other testimony. If the deed had been destroyed, the handwriting of the witnesses could not be proved, and defendants were forced to other sources for proof of execution. The court did not err in permitting the proof to be made by the witness Cadow, nor by other witnesses who testified to Elliott's

admissions, and to his acts indicating that he set up no claim to the lands.—*Ellerson v. The State*, 69 Ala. 1.

The testimony of Cadow, if believed, showed that the deed was executed ; and it is also shown, if the testimony be legal, and be believed, that Elliott's deed to Cadow was mailed to the said firm of attorneys in Alabama ; and there is testimony tending to show the deed was received by the attorneys, and was afterwards destroyed in the burning of their office.   Two questions arise on this feature of the case : First, was there a sufficient predicate laid for the introduction of secondary evidence of the contents of the deed ?   We will not enter into any collation of the testimony, but we have no hesitation in holding there was a sufficiency of legal evidence of the execution and loss, or destruction of the deed, to authorize secondary proof of both its execution and contents.—1 Brick. Dig. 848–54, §§ 632, 639, 641, 654, 670, 681, 686, 698, 701, 705, 706, 708, 712, 713, 719, 722, 724.

When a witness is shown to be dead, or beyond the jurisdiction of the court, written entries and memorials of a transaction, entered in the usual course of business, and which are shown to be in the handwriting of the absent or deceased witness, and purport or are shown to have been made at or about the time of such alleged transaction, are admissible evidence, in any issue involving the transaction to which they relate.—1 Greenl. Ev. § 118, and notes; *Union Bank v. Knapp*, 3 Pick. 96 (s. c., 15 Amer. Dec. 181, and note); *Clemens v. Patton*, 9 Por. 289 ; *Batre v. Simpson*, 4 Ala. 305; *Grant v. Cole*, 8 Ala. 519 ; *Avery v. Avery*, 49 Ala. 193; *Dismukes v. Tolson*, 67 Ala. 386 ; *Chaffee v. U. S.*, 18 Wall. 516.

There is a great deal of testimony in this record, and there seems to have been an attempt to reserve an exception to every separable portion of it.   Such mode of exception frequently defeats itself, and amounts to nothing more than a general objection and exception to an undistinguished mass, and will be overruled, if any separable portion of such mass be free from error.—*Mayberry v. Leech*, 58 Ala. 339 ; *Irvin v. The State*, 50 Ala. 181 ; *Wallis v. Rhea*, 10 Ala. 451.   In such attempt to secure a revision of all errors, by reserving an indiscriminate exception to every ruling, good, bad and indifferent alike, counsel presumes too much, when it is supposed the court will analyze and dissect a voluminous record, to ascertain if the lower court may not have erred in some particular.

We find no error in the proof of the admissions alleged to have been made by Thomas Garrett, as to the person under whom he held possession ; nor in the testimony of the witness Cadow, except that we do not perceive the pertinency of the letter of B. F. Pope to Cadow, McKenzie & Co., bearing date

May 20th, 1868—"Exhibit B." "Exhibit D" was admissible, as tending to prove the transmission of the deed to Pope & Son. With the like single exception, we find no error in the admission of Gaunt's deposition. It falls entirely within the rule declared above, as to the admissibility of entries made by deceased witnesses. The trust-deed from Garrett to Cadow, McKenzie & Co., so far as we can perceive, had no bearing whatever on any issue in this cause, and should not have been admitted. It was no part of the record.

The fifth and sixth charges asked by plaintiff and refused, should have been given. In all other respects, we find no error in the charge of the court.

Reversed and remanded.