# Hancock *v.* Kelly *et al.*

### *Statutory Action in the Nature of Ejectment.*

1. *Impeaching witness by proof of former admissions.*—Plaintiff suing to recover the possession of lands which had been allotted to her as her dower interest in the lands of her deceased husband, and testifying that she had never signed a conveyance, or other written instrument relating thereto, it is competent for the defendant to contradict and impeach her testimony, by proof, by a witness who was present, of the *factum* of the execution of the conveyance.

2. *Proof of execution of deed or writing.*—A witness may testify to the fact of the execution of a written instrument, without producing it, or accounting for its absence; but not to its contents, or legal effect—as, that it was a deed, or conveyance.

3. *Memorandum or entries in book; admissibility as evidence.*—When a witness produces a memorandum, and testifies that he made it in the usual course of business, and that he knew at the time its contents were true, his testimony and the memorandum are both admissible as evidence; and if the person who made the memorandum, or entries in books, is dead, they are admissible as evidence, on proof of his handwriting and of the fact that they were made, in the usual course of business, at or about the time of the transaction to which they relate.

4. *Declarations of mortgagor; admissibility as evidence.*—The declarations of the mortgagor, to the attorney who wrote the instrument, made at the time it was written, stating the incumbrances on the land, or that there were no incumbrances on it, are admissible as evidence on the principle of *res gestæ*, in favor of a subsequent purchaser, as against a person asserting an interest or incumbrance then outstanding.

5. *To what witness may testify.*—While a witness can not testify that, while plaintiff and her son were living together on a tract of land, the son "recognized plaintiff's claim of dower," this being the mere expression of an opinion; yet he may testify that, while they were so in possession, "plaintiff claimed a dower interest in said lands," and that the son "claimed only the reversion therein, and the fee of the balance of the tract," this being the statement of a collective fact, and subject to explanation on cross examination of the witness.

6. *Abstract charge.*—The giving of an abstract charge, which asserts a correct legal proposition, is not a reversible error, unless the record shows that the jury were thereby misled to the prejudice of the appellant; but a charge will not be considered abstract, which authorizes the jury to disregard "any statements" made by a witness, as being the

mere expression of an opinion, merely because the witness did not use the precise words employed in the charge.

7. *Statute of limitations in favor of purchaser without conveyance; proof of payment of purchase-money.*—Where the purchaser of land has never received a conveyance, payment of the purchase-money is necessary to perfect a bar under the statute of limitations and adverse possession for any period less than twenty years; and the failure of the vendor to present a claim for the purchase-money as unpaid, against the insolvent estate of the deceased purchaser, is not conclusive of the fact of payment, but merely a circumstance to be considered by the jury in connection with all the other evidence bearing on the question.

8. *Charge on part of evidence.*—A charge which, on a controverted question of fact, states all the evidence in favor of one of the parties, and instructs the jury that, if believed, it authorizes a verdict for him, thereby withdrawing from their consideration all the evidence on the other side, is erroneous.

APPEAL from the Circuit Court of Madison.

Tried before the'Hon. H. C. SPEAKE.

This was the statutory real action in the nature of ejectment by the appellant, Julia J. Hancock, against the appellees, Emmett Kelly and Solon Kelly, and is now before this court the second time.—See *Kelly v. Hancock*, 75 Ala. 229. The pleas were, in short by consent, "not guilty, statute of limitations of ten years, and statute of limitations of twenty years."

In 1856, Robert Hancock died intestate in Madison county, Alabama, seized and possessed in fee simple of 640 acres of land, out of which the land in controversy (213⅓ acres) was, April 4, 1857, duly assigned to the plaintiff, Julia J. Hancock, the widow of the decedent, as her dower in said lands. John Seay, the administrator of the estate of said decedent, sold, Oct. 18, 1858, under an order of court, the reversion in said dower lands, together with the fee of the balance of said tract of 640 acres, to William M. Gooch.

The plaintiff testified, that after said land had been assigned her as dower, she orally authorized John Seay, the administrator, to sell her dower interest therein for $4,000, telling him that she would make a conveyance of it when she received that sum ; that she received through said Seay $2,000 in part payment for said dower interest, and, thereafter, in January or February, 1858, she went to Winchester, Tenn., to educate her children, and about that time, William M. Gooch went into the possession of said dower land, together with all of said tract of 640 acres ; that she never received any more of the purchase-money of her dower interest, or any note or bond or evidence of indebtedness for the balance thereof, from any one, and never executed a conveyance of her dower interest or any paper writing in reference to the sale of it ; that in March, 1867, she returned

24

from Tennessee, and from that time until January, 1881, lived in the residence on said dower land, claiming and holding the same as her dower; that from the time of her return in March, 1867, until his death in November, 1880, her son, John W. Hancock, lived with her on said land, claiming the reversion in said dower land and the fee in the remainder of said 640 acres, for himself and his infant brother, Robert H. Hancock, and, during said time, said John W. Hancock recognized her dower interest in said land, and, in consideration of the use thereof, supported her and paid the taxes thereon; that a week or two after the death of said John W. Hancock, Robert L. Pulley, who conveyed to the defendants, visited her and informed her that he had a mortgage on all of her son's property, and she informed said Pulley of her dower interest, and claimed a right to a home on the dower land as long as she lived, to which he replied, "no, a mortgage is before anything," and, believing this to be true and having been informed that the family grave-yard had been reserved, she got a Mr. Smith to step off a half acre, the extent of said grave-yard, to ascertain if it included an office or small building in the yard, and had notice of her claim to said half acre given at the sale under the mortgage of Pulley, and when defendants, who were purchasers at said mortgage sale, moved into the dwelling house on said land, she moved into said office and remained there several days and until notified by defendants to move out, and that the roads being bad and Huntsville ten miles distant, she had no opportunity to consult a lawyer as to her rights until a short time before bringing this suit. The plaintiff admitted that she had never presented any claim for the balance of the purchase-money of her dower to any administrator of the estate of William M. Gooch, nor filed the same against his insolvent estate, because she believed the land was bound for the payment of the purchase-money.

Amanda Wade, a witness for the plaintiff, testified, that she lived within three miles of the land sued for, during said period of time from March 20, 1867, to the death of John W. Hancock in 1880; that plaintiff and said John W. Hancock lived together on said land during that time, and witness was on terms of close intimacy with them, and knew how they held the land sued for; that during the whole of said time, the plaintiff claimed a dower interest in said land and John W. Hancock claimed only the reversion therein and the fee of the balance of said 640 acres; that, on her visits to them, which were frequent and sometimes prolonged, she repeatedly heard John W. Hancock refer to said land as his mother's dower, and plaintiff refer

to her said dower, and on one occasion, she asked him why he did not improve a certain red hill on the land sued for, and he replied, that it was his mother's dower.   This witness also testified, that at the mortgage sale to defendants, a claim to the half acre of land embracing the grave yard was announced at the request of plaintiff.   Harriet Wade, a witness for plaintiff, testified substantially as Amanda Wade, except as to notice of the claim of said half acre, as to which she did not testify.   William Johnston, colored, a witness for plaintiff, testified, that he was a farm hand under John W. Hancock from the time he moved on said land in 1867 until his death in 1880, and during that time, the plaintiff lived with John W. Hancock on said land, claiming the land sued for as her dower, and that John W. Hancock did not claim said dower land, but always referred to it as " mother's dower."

The defendants introduced in evidence the certified transcript of the record of the Chancery Court of Madison county in the cause of *John W. Hancock et al. v. Edward E. Douglass, as administrator of the estate of Wm. M. Gooch et al.* As was shown by this record, this was a bill filed by the heirs and administrator of Robert Hancock, the deceased husband of plaintiff, against the administrator and heirs of Gooch, to enforce a vendor's lien on the lands purchased by Gooch at the sale by John Seay, as administrator of the estate of said Robert Hancock.   The bill set forth the extent of Gooch's purchase, that it embraced only the reversion in that part of the land which had been allotted to the plaintiff as dower, and averred the allotment of dower to the plaintiff, describing it by numbers, metes and bounds. The chancellor decreed a sale of the entire tract, without mentioning the dower claim or any particular estate in any of the land, and the sale and conveyance under the chancellor's decree were made in the same way.   The plaintiff was made a defendant to the bill, but neither answered nor made other defense.   At the sale under this decree, which took place in 1867, John W. Hancock became the purchaser and received the conveyance and immediately went into possession of the land.

The defendants introduced in evidence the record of the report and decree of insolvency of the estate of Wm. M. Gooch, and a list of claims filed against the insolvent estate, showing none for plaintiff; also, the record of a mortgage executed by John W. Hancock to Robert L. Pulley, embracing the land in controversy without mentioning the plaintiff's dower estate, and a deed of conveyance embracing said land, without mentioning said dower estate, executed

by said Pulley to the defendants under the sale on said mortgage ; and, also, records of conveyances of the land in controversy with warranty of title in fee, by John W. Hancock, to secure payments of debts, to the following parties, respectively :   F. P. Ward, John M. Eldridge, and John W. Barclay, dated respectively, March 22, 1872, October 4, 1875, and October 4, 1875.

The defendants introduced in evidence, the record of a deed of trust to John W. Scruggs, purporting to have been executed June 18, 1858, by the plaintiff, for the purpose of securing James H. Scruggs and John Seay as accommodation endorsers of a bill of exchange for $2,674.62, drawn by the plaintiff on Messrs. Scruggs, Donegan & Co. of New Orleans, Louisiana, dated at Huntsville, Alabama, June 17, 1858, and payable at ninety days to said James H. Scruggs.   This deed of trust provided that it should apply to any renewal of the bill of exchange recited therein, and attached to it was a certificate of acknowledgment thereof, purporting to be by the plaintiff, in due form, before J. M. Wilson, a justice of the peace of Madison county, dated June 18, 1858.

The plaintiff, in her testimony, denied the execution of this deed of trust and of the bill of exchange recited therein, and any knowledge of either, but stated that she had an impression that John Seay told her that the $2,000.00 which he paid her had to be raised through the Scruggs', Gooch's sureties.

The defendants produced two books of the firm of Scruggs, Donegan & Co., who had an office in Huntsville, Alabama, and also in New Orleans, Louisiana, and offered in evidence two entries in these books, marked respectively, "Huntsville Office" and "New Orleans Office."  The nature of these entries and the preliminary proof thereof, are as stated in the opinion.  The plaintiff objected separately to each entry, the court overruled each objection, and the plaintiff separately excepted.

John Seay, a witness for the defendants, testified, that he was administrator of the estate of Robert Hancock during the years 1858 and 1859 ; that the plaintiff sold her dower interest in the land in controversy to Wm. M. Gooch for $3,000.00, all of which had been paid, and that it was paid partly in cash and the remainder was raised by the bill of exchange referred to in said deed of trust from plaintiff to John W. Scruggs, and that the payment of said bill of exchange was provided for by Wm. M. Gooch.  Said Seay further testified, that " she" (plaintiff) " made a conveyance to Gooch of her dower interest in said land."  The court

[Hancock v. Kelly *et al.*]

overruled plaintiff's motion to exclude this last evidence and plaintiff excepted.

Said Seay also testified, that soon after J. W. Scruggs had told witness of Gooch's having paid him a certain trust note, " the plaintiff signed a deed and that he (witness) was a witness." The court overruled plaintiff's motion to exclude this evidence and the plaintiff excepted.

Seay testified further, that " plaintiff made a deed of conveyance, it was attested by me as a witness." The court overruled plaintiff's motion to exclude this evidence and the plaintiff excepted.

There was evidence tending to show the destruction of Gooch's papers by fire.

S. D. Cabaniss, a witness for the defendant, testified that when he took the conveyance to F. P. Ward from J. W. Hancock to secure a debt, he asked said Hancock what incumbrances were on the land, and Hancock mentioned a previous mortgage, but did not mention any dower, and that this conversation occurred in the office of Cabaniss & Ward, Huntsville, Alabama, and the plaintiff was not present. The plaintiff objected to this evidence, because it was hearsay, and J. W. Hancock was dead. The court overruled the objection and the plaintiff excepted.

The defendants proved that the lands in suit were assessed for taxation to John W. Hancock from 1867 to 1880 inclusive, and also introduced other evidence tending to show that plaintiff had been paid for her dower interest in said land, and had not claimed a dower interest therein during said period; and the plaintiff introduced evidence in rebuttal.

The court charged the jury, "that the testimony of the witness, Seay, to the admission of which exceptions had been taken by the plaintiff, could not be looked to by the jury as evidence, that a deed was made by the plaintiff to Gooch conveying to him her title to the land in suit, but that said testimony could only be looked to as a circumstance, if the jury believed it, to show that plaintiff had been paid for her dower interest in said land."

At the request in writing, of the defendants, the court gave the following charges, to the giving of each of which the plaintiff separately excepted :

1. "The legal effect of the mortgages by John W. Hancock to Ward, Pulley, Eldridge and Barclay, was an assertion and warrantry, that he held the land free and unincumbered of the alleged dower interest here sued for, and that no such right, incumbrance or interest in the land existed."

2. "Any statements by the witnesses, Amanda Wade,

[Hancock v. Kelly *et al.*]

Harriet Wade and William Johnson, that John W. Hancock recognized the plaintiff's claim of dower are but expressions of opinion by the witnesses and should be disregarded by the jury."

3. "The execution by John W. Hancock of the mortgages to Pulley, Ward, Eldridge and Barclay, were each an assertion by him, that no such incumbrance existed on such land as the alleged dower interest here sued for, and if the jury believe he was at the time in actual possession of the land, exercising acts of ownership, such as renting it out, managing and controlling it in his own name, these are circumstances that should be considered by the jury as tending to show that no such claim was then set up by the plaintiff as the alleged right of dower here sued for."

4. "If the jury believe that the entries in the books of Scruggs, Donegan & Co. were really made at the time they purport to have been made, and that they are correct and accurate entries made in the ordinary and usual course of business of said firm, then the said entries and the testimony in connection therewith should be considered by the jury as a circumstance tending to support and corroborate the testimony of the witness, John Seay, and at the same time as tending to weaken reliance in the accuracy of the recollection of the plaintiff in reference to the occurrences testified about by her as a witness in this case."

5. "If John W. Hancock took possession by agent or tenant, in 1867, before he and his mother moved on the land, then the burden is on the plaintiff to prove to the satisfaction of the jury her adverse possession after they moved on the land."

6. "The jury must decide all conflict in the proof in favor of the evidence of the witness, whose testimony, from all the circumstances in the case, they think is the most likely to be correct and in accordance with the facts of the case as they really occurred and exist"

7. "If the bill of exchange for $2,761.62, paid December 18, 1858, was drawn by the plaintiff to raise money with which to pay the one maturing September 18, 1858, this was in substance a renewal provided for in the deed of trust, and if Wm. M. Gooch furnished the money with which this renewed bill was paid, then he in effect provided for the payment of the one maturing September 18, 1858."

8. "If the jury believe that the plaintiff surrendered possession of the land here sued for to the defendants after their purchase of it at said mortgage sale, then this is a circumstance that should be considered by them, as tending to show that the alleged dower interest claimed by the

[Hancock v. Kelly *et al.*]

plaintiff in this suit, was not then set up and asserted by her and does not really exist."

9. "If the jury believe that the plaintiff executed and acknowledged before J. M. Wilson the original of the deed of trust to secure the bill of exchange for $2,674.62, then this is a circumstance which should be considered by the jury in support and corroboration of the testimony of the witness Seay, and at the same time as tending to weaken reliance in the accuracy of the recollection of the plaintiff in reference to the occurrences testified about by her."

10. "The failure of the plaintiff to present any claim for the alleged balance due her on account of her sale of her dower to Gooch, to either of his administrators, is a circumstance tending to support and corroborate the testimony of the witness Seay, that the purchase-money was all paid by Gooch for said dower, and that no such claim for any balance due thereon was then set up or asserted by the plaintiff."

11. "If the jury believe from the evidence, that Wm. M. Gooch in 1858 purchased from the plaintiff the dower interest in the land sued for, and that he paid her the purchase-money therefor and she delivered him the possession of the land, and thereafter he held possession of it until his death as owner by virtue of said possession, and after his death his widow remained on the land and in possession of it until 1867, when she surrendered it and possession thereof to John W. Hancock, as the purchaser from the register in chancery ; and if they further believe that said John W. Hancock took possession under his deed and purchase from the register and so held possession and claimed until his death, the verdict of the jury should be for the defendants."

"12. If the jury believe from the evidence, that the plaintiff executed the alleged deed of trust to secure the payment of the alleged bill of exchange for $2,674.62, and that the entries testified to in the books of Scruggs, Donegan & Co. are accurate and correct, and were made in the ordinary and usual course of business of said firm, and that the plaintiff did not present any claim for the alleged balance due her on account of her sale to Gooch of her dower interest, to either of his administrators, and that John W. Hancock with her knowledge took possession of said land under his deed from the register in chancery, and was in actual possession of it until his death in 1880, continuously from the year 1867, leasing, collecting rent and managing and controlling the land in his own name, and that during his possession he executed said mortgages to Pulley, Ward, Barclay and Eldrige, and that he instituted said chancery suit with the knowledge, consent and approval of the plaintiff

[Hancock v. Kelly *et al.*]

and obtained said decree therein and purchased said land thereunder, and that, at the sale of said land under the mortgage to Pulley, the plaintiff had the announcement publicly made that she claimed the grave yard, including half an acre of the land and office situate thereon, were reserved, and that said half acre was on the land here sued for and was measured off for her by Smith before the sale, and that she surrendered possession of the land to the defendants, after their purchase at said mortgage sale—these circumstances the jury should consider as tending to support the testimony in behalf of the defendants and weaken reliance in that in favor of the plaintiff, and would authorize the jury to find a verdict in favor of the defendants."

"13. If the jury believe from the evidence, that the plaintiff was informed of the sale under the mortgage before it took place, and, at her request, the witness, Amanda Wade, attended and had the announcement publicly made at the sale in the name and behalf of plaintiff, that a half acre of the land, including the grave yard and office, were reserved and claimed by the plaintiff, then this is a circumstance which should be considered by the jury as tending to show that the plaintiff at the times set up and asserted no such claim of dower as is sued for."

D. D. SHELBY, for appellant.—1. The evidence of the witness, Seay, as to the execution of a deed by the plaintiff to her dower interest, should have been excluded. In the *first* place, no predicate was laid for the introduction of secondary evidence.—1 Whart. Ev. 144 ; Taylor's Ev. 404. There was no proof of a delivery of the deed. In the *second* place, it was a mere legal conclusion to say it was a deed. A witness should have been called who read the deed, or heard it read, and could testify at least to the substance of its operative parts.—1 Wharton's Ev. 140 ; *Shorter v. Shepherd*, 33 Ala. 648 ; *Bethea v. McCall*, 3 *ib.* 449 ; *Mcore v. Langston*, 28 Bar. 543 ; 1 Green. Ev. 538, note 1 ; *Taylor v. Riggs*, 1 Pet. 591 ; *Metcalf v. Van B.*, 3 Comst. 424. The limitation of this evidence by the charge of the court did not prevent injury from it or cure the error. —1 Brick. Dig. 780, § 100. 2. The entries from the books of Scruggs, Donegan & Co., were not legal evidence.—*Acklen v. Hickman*, 63 Ala. 494 ; *M. & C. R. R. Co. v. Maples*, 63 *ib.* 601 ; *Nally v. Holmes*, 3 *ib.* 642 ; *Moore v. Andrews*, 5 Port. 107 ; *Godbold v. Blair & Co.*, 27 *ib.* 594 ; *Hudson v. State*, 61 *ib.* 339. 3. The thirteen charges given for defendant discussed at length and contended to be erroneous.

[Hancock v. Kelly *et al.*]

CABANISS & WARD, and R. C. BRICKELL, *contra.*—1. Charge No. 2 was abstract. The giving of an abstract charge is not an error for which the judgment will be reversed, unless it appears the jury were thereby misled to the prejudice of the appellant.—1 Brick. Dig. 336, §§ 10, 11. It is the duty of the appellant, if he fears the jury will be misled, to ask an explanatory instruction.—*Edwards, Hudman & Co. v. Whyte & Hall*, 70 Ala. 370. The charge, though abstract, expressed a correct legal proposition. If a witness should testify to the special acts and words done and spoken about a matter, and then should swear that " a claim of dower was recognized by such acts," it would not be improper for the court to instruct the jury, that such expression was the mere conclusion of the witness and should be disregarded. *M. & W. P. R. R. Co. v. Varner*, 19 Ala. 185; *Perry v. Graham*, 18 *ib.* 822; *Thomas v. De Graffenried*, 27 *ib.* 651; *Binje v. Creagh*, 21 *ib.* 151. 2. Charge No. 12 was properly given. Every reasonable intendment will be indulged to uphold the verdict and judgment. The evident intent of the court in the use of the word " would " in the concluding clause of the charge, was to give it the meaning usually attached to " might." In this view, the instruction was correct.

CLOPTON, J.—The allotment and assignment to appellant of the land, to recover possession of which she brought the suit, as her dower interest in the real estate of her husband, would entitle her, though she may have been paid the purchase-money, to recover in a court of law, in the absence of a conveyance, unless her right is barred by the statute of limitations, or by prescription. The court having instructed the jury, that they could not look to the testimony of Seay as evidence that a deed to her dower interest had been made to Gooch, and there being no other evidence of a conveyance, the material issue, decisive of the controversy between the parties, was, whether there had been continuous adverse possession sufficient to bar a recovery. It thus became incumbent on defendants to show such possession in themselves and those from and under whom they claimed. *Kelly v. Hancock*, 75 Ala. 229. The posture of the case was understood by the court and parties, and to this issue the testimony was mainly directed. As affecting the question of adverse possession, and of the time necessary to perfect a bar, proof of the payment of the purchase-money, and of the character of the possession of John Hancock, was relevant and important. On both of these questions the testimony was in conflict. The admissibility of the evidence objected to, and the charges of the court upon the effect of

portions of the evidence, should be considered in reference to the issue and the conflict.

The plaintiff having testified that she had not been paid all the purchase-money for her dower interest, and that she had never signed a conveyance, or other written instrument relating thereto, it would have been competent for the defendants to have contradicted and impeached her testimony, by proof that, on other occasions, she had admitted the execution of a conveyance. On the same principle, and for the same purpose, a witness, who was present, may testify to the *fact* of execution. Such evidence is not secondary in its character. The *factum* of a written instrument may be shown, without its production, or accounting for its absence, but not its contents or legal effect. Though the witness may call it a deed or conveyance, this is not proof that it is a deed. Such evidence merely means that the plaintiff signed a written instrument relating to her dower interest, but is not competent to show its nature or legal effect. The rights of the plaintiff were protected by the instruction as to the limitation of the effect and extent of the evidence. *Shorter v. Sheppard*, 33 Ala. 648.

When an original memorandum is produced, and a witness testifies that he made it in the usual course of business, and that at the time he made it he knew its contents to be true, this is equivalent to an affirmation of the truth of the contents, and lets in both the testimony of the witness, and the memorandum.—*Acklen v. Hickman*, 63 Ala. 494; *Calloway v. Varner*, 77 Ala. 541. If the witness is dead, entries of a transaction, made in his handwriting in the usual course of business, and which purport, or are shown to have been made at or about the time of its occurrence, are admissible evidence in any issue involving the transaction. –*Elliott v. Dyche*, 78 Ala. 150. The books, in which the original entries were made, were produced. Those in the book kept in the Huntsville office were made by Martin in the usual course of business, who testified they were correct, and those in the book kept at the New Orleans office are shown to have been entered in the usual course of business in the handwriting of a deceased clerk, and purport to have been made at the time the transactions occurred. The transactions involve the issue of the payment by Gooch of a bill of exchange drawn by plaintiff on Scruggs, Donegan & Co., by means of which Seay testified, a part of the purchase-money for the dower interest was raised, and an arrangement made with Gooch, the vendee, to provide for its payment. The entries are admissions of Scruggs, Donegan & Co., on whom the bill of exchange was drawn, of its pay-

ment, and how and by whom paid. Under the circumstances, they are admissible evidence against the plaintiff.

The declarations of John W. Hancock to Cabaniss, at the time of executing the mortgage, were admissible as part of the *res gestæ* of conveying the title to the land.—*Heflin & Phillips v. Seay*, 78 Ala. 180.

The court instructed the jury, at the request of the defendants, that "any statements by the witnesses Amanda Wade, Harriet Wade, and William Johnston, that John W. Hancock recognized the plaintiff's claim of dower are but expressions of opinion by the witnesses, and should be disregarded by the jury." The persons named were examined on the part of the plaintiff as witnesses on the question of a dower claim and possession, and without motion to exclude the evidence. Had they testified in the terms of the charge, it may be conceded, that such statement would have been the expression of a conclusion or opinion. But such is not the testimony of the witnesses. They testified substantially, that plaintiff claimed the land in controversy as her dower, and her son claimed the reversion and the balance of the lands; that he did not claim the dower land, and always referred to it as his mother's dower. Both the plaintiff and her son were residing on the land. Whether the son held in recognition of the plaintiff's claim of ownership, or whether he was in possession, claiming the land in his own right, and the plaintiff was a member of his household, asserting no claim, was a controverted question of fact. Some of the statements are, in substance, the declarations of John Hancock explanatory of his possession; and the statements, as to what each claimed, are not expressions of opinion, such as are inadmissible. They may be inferences, but necessarily involving the acts or declarations of the parties—the equivalent of a collective statement—and may be stated without specification of the acts or declarations, subject to a cross-examination as to their sufficiency. *S. & N. Ala. R. R. Co. v. McLendon*, 67 Ala. 266; *Elliott v. Stocks*, 67 Ala. 290; *Street v. Sinclair*, 71 Ala. 110.

It is insisted, however, that as the record shows the witnesses did not use the expressions attributed to them, the charge is abstract, and should not work a reversal of the judgment unless it affirmatively appears that the jury were misled to the prejudice of appellant. Such is our ruling, when an abstract charge asserts a correct legal proposition. We do not so regard the charge. Construing it in reference to the evidence of the witnesses, the expression, "any statements (by them), that John W. Hancock recognized the plaintiff's claim of dower," is the conclusion of the drafts-

man incorporated in the instruction—a combination of the statements to which the charge refers. The legal effect is to instruct the jury, that the statements as made by the witnesses are expressions of the opinion, and should be disregarded. The instruction substantially withdrew, and the jury must have so understood, from their consideration, all the material evidence of the witnesses mentioned. The plaintiff had the right to have the credibility of the witnesses, and the sufficiency of the evidence passed on by the jury.

The twelfth charge, given at the request of defendants, is subject to criticism. On the former appeal, we held, that the court did not err in rejecting the trust-deed, on the ground that *on its face* it did not prove anything material to the issue, and no evidence was offered in connection with it, tending to show its materiality. The testimony, which connects it with the payment of the purchase money for the dower interest, shows its materiality. Without this evidence, which connects also the bill of exchange, neither the trust-deed, nor the entries in the books, would be relevant, and while the omission to present the claim against Gooch's estate is a circumstance to be considered by the jury, it is not conclusive of the payment of the purchase money. Payment of the purchase money, which in a case like the present, is necessary to perfect a bar within less than twenty years, is not a conclusive inference from the facts recited in the charge. This question should have been submitted on the entire evidence to the determination of the jury. On the former appeal, we also held, that the bill in the chancery suit shows that no lien existed against the dower estate ; that none was asserted, and that the decree must be referred to the claim set up in the bill. The register's deed also must be referred to the decree. John Hancock may have taken possession under the deed, and continued in posse-sion, leasing the land, collecting the rent, and managing it in his own name, yet possibly in recognition of the plaintiff's right. Though the facts stated, in connection with the subsequent surrender of possession, and notice only of a claim to the grave-yard, may be strong circumstances, requiring satisfactory explanation, adverse claim and possession are not indisputable conclusions, without reference to the other evidence. There can be no question, that if the jury believed the hypothetical facts, and also the other evidence introduced by the defendants, they would have been authorized to find in their favor. But the obnoxious feature of the charge consists in the last clause, which instructs the jury, that merely the *facts recited*, if be-

[Dossey v. Pitman *et al.*]

lieved, authorize them to find a verdict in favor of the defendants, without submitting to their determination, whether, in fact, the evidence in behalf the defendants was corroborated, and the value of the plaintiff's impaired thereby—in effect withdrawing from their consideration all the other evidence bearing on the question of adverse possession.

We have examined the other charges, and find in them no reversible error. If the plaintiff alleges that the facts stated in the several charges were explained by other circumstances, an explanatory charge relating to them should be asked.

Reversed and remanded.


### Statutory Action in the Nature of Ejectment.

